JOSLYN MANUFACTURING & SUPPLY CO., PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9809.     Promulgated April 7, 1927.

The cost of stock which by the evidence is clearly shown to be worthless within the taxable year may be deducted as a loss sustained.

*Henry W. Wales, Esq.,* for the petitioner.
*John W. Fisher, Esq.,* for the respondent.

Deficiency of $23,849.81 income and profits tax for 1920, only part of which is contested by petitioner. The issue as to such part is whether petitioner in 1920 sustained a deductible loss of $29,635.68 in respect of stock alleged to have become worthless.

FINDINGS OF FACT.

The petitioner is an Illinois corporation with its principal office at Chicago.. It is, and was during 1920, engaged in the business of manufacturing and distributing outdoor electrical construction material, selling exclusively to wholesale dealers or jobbers.

The petitioner did not have a satisfactory outlet for its products in the southeastern part of the country. During the war one R. T. Stewart of Atlanta, Ga., approached the petitioner with the suggestion that, in view of this lack of representation, a jobbing house be organized at Atlanta to sell in that territory, of which he would be the head, and in which he would take an interest. This was agreed to and the Southern Electric Supply Co. was organized. The petitioner purchased two-thirds of the capital stock of this company and advanced to Stewart the money necessary for him to purchase one-third of the stock.

The management of the Southern Electric Supply Co. by Stewart was unsatisfactory and he was discharged and one Boyd became manager in his place.

The business grew and sales increased up to and during the first half of 1920. During the early part of 1920 jobbers throughout the country were having difficulty in getting supplies and Boyd placed duplicate orders with factories for materials to meet the requirements of the Southern Electric Supply Co. Rental had theretofore been paid in the amount of $175 a month, but Boyd at this time contracted for the construction of a building, the rental of which was approximately $900 a month.

About July, 1920, there was a decided change in business conditions in the electrical industry. Prices declined and there was no market except at a sacrifice. There was a decline in the values of merchandise between July and the end of the year averaging at least 40 per cent.

The sales of the Southern Electric Supply Co. dropped from $75,000 a month to $25,000 or $30,000 a month in the latter half of 1920. Whereas some dealers began to cancel orders on factories and to liquidate stock about the first of July, and many had done so by the first of August, all orders placed by Boyd for the Southern Electric Supply Co. were taken in full, even though duplicated and triplicated and in some instances ordered ten times. A large part of this material was of very poor quality.

In November the petitioner called upon Boyd for a statement of the amount of stock on hand and of other details of the Southern Electric Supply Co. business, and a report was sent to the petitioner on December 1, 1920. This report showed about $200,000 worth of merchandise on hand, inventoried at cost, and losses which impaired

the capital of the company. Giving effect to the decline in the market value of the merchandise, there was an additional deficit of $80,000, a total extinction of the stockholders' equity.

In the month of December, 1920, the petitioner, rather than put the company into bankruptcy, took steps to liquidate the business of the Southern Electric Supply Co. Arrangements were made with one McKirahan and one Warner to go to Atlanta to take charge of the liquidation of the company. As an inducement to them the petitioner agreed that on July 1, 1921, an inventory of the assets of the Southern Electric Supply Co. should be taken and that it, petitioner, would absorb the deficit between the value of the assets and the liabilities of the Southern Electric Supply Co. and at the same time would pay in $75,000 in cash for new stock of the company.

About January 10, 1921, the Southern Electric Supply Co. furnished to the petitioner a detailed financial statement as of January 1, 1921. This statement showed a deficit of $31,826.84. A check of this statement was made by McKirahan about January 12, 1921, and again after he reached Atlanta in May, 1921. Inspection of the merchandise at that time disclosed that there was an overvaluation in the merchandise inventory of $21,323.60, and it was determined that an aggregate amount of $28,103.23 of the accounts receivable appearing upon the statement was uncollectible.

The business of the Southern Electric Supply Co. was in process of liquidation from December, 1920, to July 1, 1921. On the latter date an inventory of the assets of the company was taken, and pursuant to the arrangement with McKirahan and Warner, the petitioner then absorbed the deficit between the assets of the Southern Electric Supply Co. and its liabilities, which amounted to from $25,000 to $30,000; paid in cash $75,000 for new stock of the company; and canceled or caused to be canceled and surrendered to the company certificates representing the original issue of $75,000 of stock.

In the month of December, 1920, the petitioner wrote off on its books its stock investment in the Southern Electric Supply Co. amounting to $29,635.68, which was the cost to it of the stock which it owned.

There were no extraordinary business conditions from the first of January, 1921, to July, 1921, that did not obtain in the month of December; the slump came in the fall of 1920. A slow gradual recovery came in 1921, and the inventory values of merchandise were slightly higher on July 1, 1921, than on January 1, 1921.

OPINION.

STERNHAGEN: The petitioner contends that in the calendar year 1920 the stock of the Southern Electric Supply Co. which it owned at a cost of $29,635.68 became worthless and was therefore deductible

as a loss sustained in the taxable year. From the foregoing facts it is apparent that at the close of the year 1920 the financial and commercial position of the Southern Electric Supply Co. was valueless and hopeless. It had so far committed itself to purchases of materials at high prices that it had an inordinately inflated inventory on hand, much of which was of inferior quality and which could not be disposed of. Its financial statements showed that it was insolvent and a verification of this later disclosed that there was not during the year 1920 anything for the stockholders and no hope that anything would be left for them after liquidation. Not only were the officers *bona fide* convinced of the worthlessness of the venture, but the true condition of the business fully substantiated their judgment. The only reason why the petitioner continued any relations with the Southern Electric Supply Co. was its desire to bear its full share of the burdens of the mismanagement and misfortune of the company.

Some point was made at the hearing that the definite ascertainment of the worthlessness of the stock was not until after the close of 1920, but as petitioner properly points out, the statute does not make the loss deduction dependent upon the time of ascertainment but rather upon the time when the loss is truly sustained. *Carl Muller*, 4 B. T. A. 169. See also *Henry M. Jones*, 4 B. T. A. 1286. Furthermore, even if ascertainment were necessary to support the deduction, it may fairly be said that such ascertainment occurred in 1920 and that subsequently further investigation was made to determine the extent of the deficit and the demands upon the petitioner which the liquidation would make. This subsequent investigation corroborated the petitioner's judgment of 1920. Upon this issue the Commissioner is reversed.

> *Judgment will be entered on 20 days' notice, under Rule 50.*